UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

SUSAN GUINUP,

                          Plaintiff,                              5:07-CV-1120
                                                                 (GTS/ATB)
v.

PETR-ALL PETROLEUM CORPORATION;
and PETR-ALL PETROLEUM CONSULTING
CORP.,
                          Defendants,
_____

APPEARANCES:                                    OF COUNSEL:

BLAU, BROWN & LEONARD, LLC                       STEVEN BENNETT BLAU, ESQ.
    Counsel for Plaintiff
54 West 21st Street, Suite 1009
New York, NY 10010

HINMAN, HOWARD & KATTELL, LLP                    LESLIE PRECHTL GUY, ESQ.
    Counsel for Defendants                       JAMES S. GLEASON, ESQ.
80 Exchange Street
700 Security Mutual Building
Binghamton, NY 13902-5250

MORGAN LEWIS & BOCKIUS, LLP                      MICHAEL J. PUMA, ESQ.
    Counsel for Defendants
1701 Market Street
Philadelphia, PA 19103

HON. GLENN T. SUDDABY, United States District Judge

## MEMORANDUM DECISION and ORDER

Currently before the Court in this employment action filed by Susan Guinup ("Plaintiff")
is a motion for summary judgment filed by Petr-All Petroleum Corporation, doing business as
Express Mart, and Petr-All Petroleum Consulting Corp. ("Defendants").  (Dkt. No. 27.)  For the
reasons set forth below, Defendants' motion is granted.

I.      RELEVANT BACKGROUND

    A.      Plaintiff's Claims

Generally, liberally construed, Plaintiff's Complaint alleges that Defendants violated the

Fair Labor Standard Act, 29 U.S.C. § 201 *et seq.* ("FLSA"), and related New York state labor

laws, by failing to pay overtime wages to all non-exempt employees for work in excess of forty

(40) hours per week.  (*See generally* Dkt. No. 1 [Plf.'s Compl.].)  In support of her claims,

Plaintiff alleges that, despite Defendants designating her (and other Express Mart daytime retail

outlet managers similarly situated to her) as exempt employees, they are non-exempt employees

because, among other things, "starting more than three years ago and continuing to present," she

(and other Express Mart daytime retail outlet managers similarly situated) "devoted less than

20% of their work week hours to activities directly or closely related to executive or

administrative activities."  (*Id.*)  Familiarity with the remaining factual allegations supporting

these claims in Plaintiff's Complaint is assumed in this Decision and Order, which is intended

primarily for review by the parties.  (*Id.*)

    B.      Defendants' Motion

On December 28, 2007, Defendants filed a motion to dismiss pursuant to Fed. R. Civ. P.

12(c) and 23(d)(4).  (Dkt. No. 7.)  On October 15, 2008, prior to that motion being decided, the

parties entered into a stipulation whereby Defendants agreed to voluntarily withdraw, without

prejudice, their pending motion to dismiss, and Plaintiff agreed to voluntary strike her state law

class claims, so that the parties could engage in discovery limited to Plaintiff's individual claims.

(Dkt. No. 17.)  On that same day, the Court issued a Decision and Order approving the parties'

stipulation.  (Dkt. No. 18.)  Upon the conclusion of discovery related to Plaintiff's claims,

Defendants filed a motion for summary judgment.  (Dkt. No. 27.)

Generally, in support of their motion for summary judgment, Defendants argue as follows: (1) Plaintiff's claims should be dismissed because she satisfied the executive exemption to the FLSA and related New York law; (2) Plaintiff's New York State spread-of-hours claim should be dismissed because she was paid far more than the minimum wage rate; and (3) Plaintiff's New York State meal period claim should be dismissed because she lacks a private right of action.  (*See generally* Dkt. No. 28 [Defs.' Memo. of Law].)

In Plaintiff's response to Defendants' motion for summary judgment, she argues that it is inappropriate to conclude that she was an exempt employee as a matter of law because (despite her job title and managerial duties) there is a genuine issue of material fact regarding whether her primary duty consisted of management.  (*See generally* Dkt. No. 44 [Plf.'s Response Memo. of Law].)

In their reply, Defendants reiterate previously asserted arguments, highlighting Plaintiff's failure to distinguish a number of the controlling cases cited by Defendants in their memorandum of law, and emphasizing that an analysis of the "primary duty" factors in the Secretary of Labor's promulgated regulations establishes that Plaintiff's primary duty was to manage Store 360.  (*See generally* Dkt. No. 46 [Defs.' Reply Memo. of Law].)

### C.   Undisputed Material Facts

The following is a general summary of material facts that are undisputed by the parties.  (*Compare* Dkt. No. 28 [Defs.' Memo. of Law containing Defs.' Rule 7.1 Statement] *with* Dkt. No. 44, Attach. 3 [Plf.'s Rule 7.1 Response].)

On June 18, 2000, Petr-All hired Plaintiff as the Store Manager of Store 360, a combination convenience store and gas station, located in Cato, New York.  (Prior to joining Petr-All, Plaintiff had eight to ten years of experience managing convenience stores.)  From June

2000 to January 2001, and July 2001 to July 2004, Plaintiff reported to an Area Supervisor named George Tartick.  From January 2001 to July 2001, and June 2004 to June 2007, Plaintiff reported to an Area Supervisor named Steven Nucci.  Throughout her employment with Defendant, Plaintiff's supervisor only visited her store, on average, once per week for between one hour and half the day.

Sales Associates, Store Co-Managers (also known as Assistant Managers), and Store Manager Trainees, who also worked at Store 360 at various times, all reported to Plaintiff. However, as Store Manager, Plaintiff was the only exempt, salaried employee at her store.  All of the other employees were non-exempt employees who were paid on an hourly basis.

Throughout Plaintiff's employment with Petr-All, she was paid a fixed weekly salary of $565.00 to $834.30, regardless of the number of hours she worked or the quality of her work, with the exception of a single week during her seven years of employment, in which she received less than a full week's salary because she was suspended from work for several days.  Plaintiff also received incentive compensation under Petr-All's Corporate Incentive Program ("Incentive Program").  Because the "objective" of the Incentive Program was to "continually increase sales to achieve more profitability for the company and a larger incentive," for Plaintiff to be eligible for an incentive award, her store's sales had to "exceed the merchandise sales compared to the same quarter last year."  The incentive award was a percentage of store sales, subject to reductions based on four profitability criteria.  As the Store Manager, Plaintiff received a higher incentive payment than all other store employees.  Specifically, the Incentive Program allocated 65 percent of the award to the Store Manager, 25 percent to any Assistant Manager, and the remaining 10 percent to the Sales Associates and Store Manager Trainees.

Plaintiff's job description required her to perform many managerial duties.  Plaintiff's duties did not change during her employment.  Plaintiff performed the job duties required of a Store Manager, and listed in her job description, to the "best of [her] abilities."  In each of her appraisals, Plaintiff's supervisors rated her job knowledge, which means "demonstrates understanding of objectives, duties and responsibilities in accordance with the job description," as "highly commendable."  Similarly, each of Plaintiff's performance appraisals concluded that she met or exceeded all the job requirements of the Store Manager position.  (Comments by both Plaintiff and her supervisors in Plaintiff's performance appraisals further confirmed her managerial role.)

As store manager, Plaintiff spent hours each week preparing the schedule for Store 360. Plaintiff decided which employees worked which days during which hours, provided that the total hours each week did not exceed a budget. Plaintiff was also required to generate and review a report of her employees' reported work hours on a weekly basis.

The labor hours available for Store 360 averaged about 350 hours per week–the equivalent of more than eight full-time employees.  (Plaintiff typically had six to eight employees on the payroll at Store 360, all of whom reported to her.)  Plaintiff was personally present at the store to supervise more than 80 employee hours per week.  These labor hours show that sales associates, stock clerks, and maintenance employees together worked, on average, in excess of 80 hours during the same shifts as Plaintiff.  Although Plaintiff testified that there were times when she worked alone, or had only one other person working in the store with her during a shift, there were also times where Plaintiff had two to three employees working with her in the store.

5

Plaintiff wrote performance evaluations for her employees, which included giving ratings, providing comments, and recommending pay adjustments.  With respect to those evaluations, the only thing that Plaintiff's supervisor may have changed at times was her recommendations as to pay increases.

In addition to handling employee scheduling, Plaintiff interviewed and hired employees, and recommended initial pay rates for new hires.  (Her Supervisors participated in the hiring process by signing paperwork related to the new hire's pay, and ultimately deciding what pay rate to set.)  Plaintiff also trained new employees.  For example, Plaintiff ensured that employees completed alcohol and tobacco sales training, which Petr-All required for compliance with state law.  (Plaintiff testified that "Co-managers," "Managers -In-Training," and experienced cashiers/sales associates also trained employees.)  Although Plaintiff had no authority to promote sales associates/cashiers to co-managers or managers, she did train potential new managers for future management positions.  In addition to more formal training, Plaintiff assisted her employees and answered their questions on a daily basis.  Her employees even called her at home with questions.

Plaintiff also recommended termination decisions, and discipline for her employees. When there were other employees in the store, Plaintiff watched them do their jobs.  Plaintiff also corrected an employee performance problems.  (In addition, a co-manager could correct an employee performance problem.)

Plaintiff reported employee and customer injuries that occurred at Store 360 to her supervisors, and recommended certain security measures to them.  Plaintiff checked the gas sticks for compliance purposes to ensure that the tanks matched what the register indicated was sold.  If the tanks were not in compliance, she had to immediately notify her area supervisor.

As the Store Manager, Plaintiff sought to increase sales. Consistent with this goal, Plaintiff succeeded in growing sales at her store.  Plaintiff's performance appraisals commended her success.  As store manager, Plaintiff was eligible for quarterly incentive awards, which were directly dependent on the sales performance of her store, supervisor inspection of the store, labor, cash shortage, and shrinkage.  Plaintiff regularly discussed sales performance and promotions with Petr-All management.  Plaintiff also maintained, on a daily basis, a book containing store sales records.  (A computer generated report of the Store 360's sales records was generated daily, but her book was written in a way that she could understand.)

Consistent with her goal of growing sales at Store 360, Plaintiff also sought to ensure uniformly good customer service, as providing good customer service was important to retain regular customers.  As another part of ensuring sales performance, Plaintiff was responsible for controlling "shrink," which is loss due to employee or customer theft or cash register shortage. To control shrink, Plaintiff observed customers and reported theft to the police.  In addition, Plaintiff reviewed security tapes to monitor for employee theft.  Also in furtherance of shrink control, Plaintiff counted cigarettes in Store 360 on a daily basis.  (Defendants required that "everyone count[] cigarettes every shift.")

As part of her responsibility for ensuring Petr-All's competitiveness, Plaintiff spent up to two hours each week conducting surveys of competitors' gas prices.  At the direction of corporate management, Plaintiff also conducted surveys of convenience store competitors.

Based on her assessment of customer demands, Plaintiff also made recommendations that Petr-All order more or less of certain products for her store.  Plaintiff's e-mails confirm that, in furtherance of sales goals, Plaintiff observed customer buying patterns and proposed inventory changes as necessary to match these patterns.

7

Plaintiff also observed sales trends and recommended markdowns to adapt to the competition.  Similarly, Plaintiff proposed pricing changes to adapt to sales trends.  Taking the initiative to grow sales, Plaintiff proposed creative ideas to corporate management.  Similarly, when Plaintiff encountered problems that she believed hindered sales growth, she communicated with corporate management about the challenges and proposed possible solutions.

Familiarity with the remaining undisputed material facts of this action, as well as the disputed material facts, as set forth in the parties' Rule 7.1 Statement and Rule 7.1 Response, is assumed in this Decision and Order, which (again) is intended primarily for review by the parties.  (*Id*.)

## II.    RELEVANT LEGAL STANDARDS

### A.    Legal Standard Governing Motions for Summary Judgment

Under Fed. R. Civ. P. 56, summary judgment is warranted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  In determining whether a genuine issue of material fact exists, the Court must resolve all ambiguities and draw all reasonable inferences against the moving party.  In addition, "[the moving party] bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the . . . [record] which it believes demonstrate[s] the absence of any genuine issue of material fact." *Celotex v. Catrett*, 477 U.S. 317, 323-24 (1986).  However, when the moving party has met this initial responsibility, the nonmoving party must come forward with "specific facts showing a genuine issue [of material fact] for trial."  Fed. R. Civ. P. 56(e)(2).

As for the *materiality* requirement, a dispute of fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248 [citation omitted].

As for the *genuineness* requirement, a dispute of fact is "genuine" if "the [record] evidence is such that a reasonable jury could return a verdict for the novmoving party." *Id.* As a result, "[c]onclusory allegations, conjecture and speculation . . . are insufficient to create a *genuine* issue of fact." *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998) [citation omitted; emphasis added]; *see also* Fed. R. Civ. P. 56(e)(2).[1] Similarly, inadmissible hearsay is insufficient to create a *genuine* issue of fact, "absent a showing that admissible evidence will be available at trial." *Burlington Coat Factory Warehouse Corp. v. Esprit De Corp.*, 769 F.2d 919, 924 (2d Cir. 1985) [citations omitted]. Moreover, "an affidavit . . . that, by omission or addition, contradicts the affiant's previous deposition testimony" is insufficient to create a *genuine* issue of fact. *Hayes v. New York City Dept. of Corr.*, 84 F.3d 614, 619 (2d Cir. 1996) [citations omitted].

Finally, as this Court has previously observed, "It is well established that issues of credibility are *almost never* to be resolved by a court on a motion for summary judgment." *Cruz v. Church*, 05-CV-1067, 2008 WL 4891165, at *4 & n.6 (N.D.N.Y. Nov. 10, 2008) (Suddaby, J.) [emphasis in original; collecting cases]. However, "there is a *narrow exception* to this well-established rule." *Cruz*, 2008 WL 4891165, at *4 [citation omitted]. In *Jeffreys v. City of New York*, 426 F.3d 549 (2d Cir. 2005), the Second Circuit explained that this narrow exception is for

---

[1]      As the Supreme Court has famously explained, "[the nonmoving party] must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986) [citations omitted].

testimony by a non-movant that possesses the following two characteristics: (1) it constitutes almost the exclusive basis for a disputed issue of fact in the case (or, expressed differently, it is largely unsubstantiated by any other direct evidence); and (2) it is so lacking in credibility (because the testimony is incomplete and/or replete with inconsistencies and improbabilities) that, even after drawing all inferences in the light most favorable to the non-movant, no reasonable jury could find for the non-movant.  *Cruz*, 2008 WL 4891165, at *4 & n.7 [collecting cases].  "Again, it must be remembered that the circumstances giving rise to this exception are rare.'"  *Id*. & n.7 [collecting cases].

**B.     Legal Standards Governing Plaintiff's Claims**

Because the parties to this action have demonstrated, in their memoranda of law, an accurate understanding of the relevant points of law contained in the legal standards governing Plaintiff's claims in this action, the Court will not recite, in their entirety, those legal standards in this Decision and Order, which (again) is intended primarily for review by the parties.  (*See* Dkt. No. 28 [Defs.' Memo. of Law]; Dkt. No. 44 [Plf.'s Response Memo. of Law]; Dkt. No. 46 [Defs.' Reply Memo. of Law].)

**III.    ANALYSIS**

**A.     Plaintiff's Claim Under the FLSA**

As stated above in Part I.C. of this Decision and Order, Defendants seek the dismissal of this claim because Plaintiff satisfied the executive exemption to the FLSA.  Based on the current record, the Court accepts Defendants' argument.

As an initial matter, the Court notes that, under the FLSA, employers are exempt from the overtime pay requirement if the employee is "employed in a bona fide executive, administrative, or professional capacity." 29 U.S.C. § 213(a)(1).  As a result, an employee may

be exempt from overtime pay if he or she qualifies as exempt under any of these exemptions. However, in their memorandum of law in support of their motion for summary judgment, Defendants have argued only that Plaintiff qualifies as an exempt executive employee. As a result, the Court will only consider whether Plaintiff qualifies as an exempt executive employee in this Decision and Order.

In addition, the Court notes that the regulations provide a "short test" for determining whether an employee qualifies for this exemption. *See* 29 C.F.R. § 541.2. Here, Plaintiff concedes that the "only issue on exemption is whether Plaintiff meets the 'primary duty' requirement." (Dkt. No. 44, at 19.) In doing so, Plaintiff implicitly acknowledges both that the short test, which contains a "salary basis" requirement and a "duties" requirement, should be used in this case, and that Defendants are able to satisfy the "salary basis" requirement of the short test. As a result, for purposes of deciding Defendants' motion for summary judgment, the Court must only decide whether Defendants have satisfied the "duties" requirement of the short test. In so doing, the Court begins by reciting the governing legal standard.

"The FLSA requires that employers pay their employees time-and-a-half after the employee has worked more than 40 hours during a work week." *Indergit v. Rite Aid Corp.*, 08-CV-9361, 2010 WL 2465488, at *2 (S.D.N.Y. June 16, 2010) (citing 29 U.S.C. § 207[a][1]). "Employers do not have to pay time-and-a-half, however, to individuals 'employed in a bona fide executive, administrative, or professional capacity.'" *Indergit*, 2010 WL 2465488, at *2 (quoting 29 U.S.C. § 213[a][1]).

"Congress did not further define these exemptions in the FLSA, but instead delegated this responsibility to the Department of Labor." *Id.* "Because the executive exemption is an affirmative defense to overtime pay claims, the employer bears the burden of proving that a

plaintiff has been properly classified as an exempt employee." *Id.* (citations omitted).

Moreover, "because the FLSA is a remedial act, its exemptions, such as the 'bona fide executive'

exemption . . . are to be narrowly construed." *Martin v. Malcolm Pirnie, Inc.*, 949 F.2d 611, 614

(2d Cir. 1991).

Department of Labor regulations set forth the following requirements for application of

the executive exemption:

> (1) [the employee is] [c]ompensated on a salary basis at a rate of not
> less than $455 per week . . . , exclusive of board, lodging or other
> facilities; (2) [the employee's] primary duty is management of the
> enterprise in which the employee is employed or of a customarily
> recognized department or subdivision thereof; (3) [the employee]
> customarily and regularly directs the work of two or more other
> employees; and (4) [the employee] has the authority to hire or fire
> other employees or [the employee's] suggestions and recommendations
> as to the hiring, firing, advancement, promotion or any other change of
> status of other employees are given particular weight.

29 C.F.R. § 541.100(a) (2007).  With regard to the second requirement (i.e. the only requirement

that the parties in this action dispute), there are currently four factors to be weighed in

determining an employee's primary duty:

> [1] the relative importance of the exempt duties as compared with
> other types of duties; [2] the amount of time spent performing exempt
> work; [3] the employee's relative freedom from direct supervision; and
> [4] the relationship between the employee's salary and the wages paid
> to other employees for the kind of nonexempt work performed by the
> employee.

The Court notes that Plaintiff was employed as Store Manager of Store 360 from 2001 to

2007.  Effective April 23, 2004, the "Primary duty" section of the Code of Federal Regulations

were amended.  *See* 29 C.F.R. § 541.700 (amending 29 C.F.R. § 541.103).  Although both

regulations provide a list factors to consider when determining the primary duty of an employee,

the new regulation (29 C.F.R. § 541.700[a]) no longer identifies "discretion in decision-making"

as a distinct consideration, because "such element is often considered 'part and parcel' of whether an employee enjoys freedom from direct supervision." *Clougher v. Home Depot U.S.A., Inc.*, 06-CV-5474, 2010 WL 935376, at *8 n.8 (E.D.N.Y. Mar. 12, 2010) (citing *Johnson v. Big Lots Stores, Inc.*, 604 F. Supp.2d 903, 917 [E.D. La. 2009]).  Otherwise, the new and old regulations regarding determination of an employee's primary duty are largely the same.  For example, both the new and old regulation state that a determination of whether an employee has management as his primary duty "must be based on all the facts in a particular case."  In addition, although the new and old regulations use different language, both state, in sum and substance, that (1) the amount of time spent performing exempt work (i.e., managerial duties) can be a useful guide in determining whether exempt work is the primary duty of an employee, and (2) although employees who spend more than 50 percent of their time performing exempt work will generally satisfy the primary duty requirement, time alone is not the sole test, and there is no requirement that exempt employees spend more than 50 percent of their time performing exempt work.

### 1. Relative Importance of Exempt Duties as Compared with Other Types of Duties

With regard to this factor, Defendants argue that Plaintiff's managerial duties were more important than her non-managerial duties because, among other things, Plaintiff performed "virtually all of" the tasks identified by the Department of Labor as being managerial tasks.  In response, Plaintiff argues that she was a non-exempt employee because she performed many of the same duties as non-exempt employees, and she was not the only employee at Store 360 who trained new employees and corrected employee performance problems.

In analyzing this factor, a court must consider whether the employee's exempt duties, i.e., his or her managerial duties, are "critical to the success of the [employer]." *Donovan v. Burger*

*King Corp.*, 675 F.2d 516, 521 (2d Cir. 1982). "Many courts have held that resolving th[e] difficult and intensive factual inquiry [regarding the relative importance of an employee's exempt duties as compared with other types of duties] is inappropriate at summary judgment." *Indergit v. Rite Aid Corp.*, 08-CV-9361, 2010 WL 1327242, at *6 (S.D.N.Y. Mar. 31, 2010) (collecting cases).

In this case, Plaintiff performed a number of managerial tasks, including interviewing and hiring new employees, scheduling, training, writing performance evaluations, reporting employee and customer injuries to corporate, discussing sales performance and promotions with corporate, conducting surveys of competitors' gas prices and convenience store business, and controlling "shrink." Plaintiff was also responsible for making recommendations to corporate regarding product ordering and pricing, new hire pay rates, employee discipline and termination, and certain Store 360 security measures. Furthermore, Plaintiff accepted phone calls at home from her subordinates at Store 360 regarding incidents that arose at Store 360 when she was not working.

Therefore, while Plaintiff also performed a number of non-managerial tasks (including ringing register, stocking shelves, counting cigarettes, printing sales reports, counting products, checking in vendors, matching invoices, rearranging products, and servicing customer needs), and may not have been the only employee at Store 360 who trained new employees and corrected employee performance problems, the undisputed facts in the record demonstrate that Plaintiff's managerial functions were more important to the success of Store 360 than her non-managerial functions. In other words, while Store 360 could have operated–albeit poorly–if Plaintiff did not perform her non-managerial duties, Store 360 could not have operated successfully unless Plaintiff performed her managerial functions, such as hiring, training, and

scheduling employees, completing the daily paper-work, and regularly reporting various day-to-day issues to corporate.[2]

## 2.    Amount of Time Spent Performing Exempt Work

With regard to this factor, Defendants argue that "store managers like Plaintiff satisfy the executive exemption, even if they spend more time on non-exempt work than managerial duties." In response, Plaintiff argues that she was a non-exempt employee because 80% of her work was not managerial in nature.  As an initial matter, Plaintiff provides no evidence, other

---

[2]        *See Thomas v. Speedway SuperAm., LLC*, 506 F.3d 496, 505 (6th Cir. 2007) ("If Thomas failed to perform her nonmanagerial duties, her Speedway station would still function, albeit much less effectively. . . . If, however, Thomas failed to perform her managerial duties, her Speedway station would not function at all because no one else would perform these essential tasks. Surely, a gas station cannot operate if it has not hired any employees, has not scheduled any employees to work, or has not trained its employees on rudimentary procedures such as operating the register. We therefore conclude that Thomas's managerial duties were much more important to Speedway's success than her non-managerial duties."); *Jones v. VA. Oil Co.*, 69 F. App'x. 633, 638 (4th Cir. July 23, 2003) (affirming district court's decision to grant defendant's motion for summary judgment, concluding that the manager of a convenience store who "spent approximately 75-80 percent of her time carrying out basic line-worker tasks" was nonetheless an exempt employee because, among other things, "the Dairy Queen could not have operated successfully unless Jones performed her managerial functions, such as ordering inventory, hiring, training, and scheduling employees, and completing the daily paper-work"); *Baldwin v. Trailer Inns, Inc.*, 266 F.3d 1104, 1114-15 (9th Cir. 2001) ("The agreement and evidence from the record support the district court's conclusion that the Baldwins 'were in charge of making the relatively important day-to-day decisions of the facility and providing for the safety of those in the property.'  The Baldwins were on-call twenty-four hours a day to handle emergencies and to exercise their managerial discretion. . . . That the assistant managers may have performed some managerial tasks does not render the tasks nonexempt.  Also, that the Baldwins performed some of the same tasks as their subordinates is not in and of itself evidence that the Baldwins do not qualify for the exemption."); *Dalheim v. KDFW-TV*, 918 F.2d 1220, 1227 (5th Cir. 1990) ("At least under the short tests, the employee's primary duty will usually be what she does that is of principal value to the employer, not the collateral tasks that she may also perform, even if they consume more than half her time."); *Burger King Corp.*, 675 F.2d at 521 (concluding that, because "[m]any of the employees themselves so testified and it [wa]s clear that the restaurants could not operate successfully unless the managerial functions of Assistant Managers, such as determining amounts of food to be prepared, running cash checks, scheduling employees, keeping track of inventory, and assigning employees to particular jobs, were performed[, and] . . . much of the oversight of the operation c[ould] be carried out simultaneously with the performance of non-exempt work, . . . the principal or most important work of the[ Assistant Managers] [wa]s managerial").

than her conclusory statement, that she spent 80% of her time performing non-exempt, manual

labor.  However, even assuming that Plaintiff is correct, "time alone is not the sole test."  29

C.F.R. § 541.700(b).[3]

### 3.    Employee's Relative Freedom from Direct Supervision

With regard to this factor, Defendants argue that, even if Plaintiff had management

oversight, she managed six to eight employees on a day-to-day basis, whom she interviewed,

trained, and evaluated.  Defendant further argues that she had the freedom to make

recommendations as to hiring, setting initial pay rates, disciplining, and terminating employees,

and, although she testified that her supervisors sometimes changed her recommendations for pay

increases, according to 29 C.F.R. § 541.105, her "suggestions and recommendations may still be

deemed to have 'particular weight' even if a higher level manager's recommendation has more

---

[3]      *See also Mims v. Starbucks Corp.*, 05-CV-0791, 2007 WL 10369, *6 (S.D. Tex. Jan. 2, 2007) (concluding that store managers were exempt employees despite spending 70 to 80 percent of their time performing barista work, such as making drinks and operating registers); *Posely v. Eckerd Corp.*, 433 F. Supp.2d 1287, 1303 (S.D. Fla. 2006) (following "the overwhelming and well-reasoned precedent holding that retail store managers who are charged with maintaining proper functioning of their stores are exempt employees" even when 80 percent of their work was non-exempt); *Jackson v. Advance Auto Parts, Inc.*, 362 F. Supp.2d 1323 (N.D. Ga. 2005) (noting that plaintiff's testimony that 90% of their time was spent selling, operating the cash register, and cleaning downplayed and minimized the importance of their positions, while pointing out that "courts recognize that the time spent performing non-managerial duties is not determinative under the short test, but rather, the employee's primary duty is what she does that is of principal value to the employer") (citations omitted); *Baldwin*, 266 F.3d at 1113-14 (affirming lower court's grant of summary judgment for defendant on plaintiffs FLSA claim where plaintiffs spent ninety percent of their time on non-exempt duties); *Spinden v. GS Roofing Products Co., Inc.*, 94 F.3d 421, 427 (8th Cir. 1996) ("accept[ing] the district court's finding that only 10 to 20 percent of Spinden's duties involved discretion," but "reject[ing] as clearly erroneous its finding that administration was not Spinden's primary duty"); *Jones v. Tiller*, No. 95-3050, 1995 WL 712674, at *3 (10th Cir. Dec. 5, 1995) (unpublished opinion) (affirming district court's determination that employee who spent 90 percent of her time on nonexempt tasks qualified for administrative exemption); *Murray v. Stuckey's, Inc.*, 939 F.2d 614, 618 (8th Cir. 1991), *cert. denied*, 502 U.S. 1073 (1992) (holding that the fact that an employee spent 65 to 90 percent of his time on nonexempt tasks "is not a controlling factor under the regulations" for determining whether the employee was exempt from the FLSA's overtime provisions).

importance and even if the employee [Plaintiff] does not have authority to make the ultimate decision . . . ."

In response, Plaintiff argues that she was a non-exempt employee because (1) her Area Supervisors closely reviewed the store's inventory orders and net sales figures, closely monitored the store's weekly payroll, controlled employee hourly rates and pay raises, routinely sent "to do" lists and emails with instructions to Plaintiff, closely supervised and audited the shrinkage, closely monitored sales volume, and oversaw safety issues and the general appearance of the store, and (2) she could only make recommendations (as opposed to decisions) regarding hiring, firing, promoting, increasing an employee's pay, employee discipline, what products to order, and what prices to set.

This factor considers only the employee's "*relative* freedom from supervision."  Thus, there is no requirement that an employer demonstrate "complete freedom from supervision, such that [the employee] is answerable to no one, as this would disqualify all but the chief executive officer from satisfying this factor of the primary duty inquiry."  *Thomas*, 506 F.3d at 507.

As an initial matter, it is undisputed that Plaintiff was the most senior employee at Store 360.  Moreover, it is undisputed that Plaintiff's Area Supervisor only visited her store, on average, once per week for between one hour and half the day.  (Steven Nucci testified that, during the time in which Plaintiff was the manager of Store 360, he was the Area Supervisor for ten stores, including hers.  *See* Dkt. No. 45, at 12.)  Furthermore, Steven Nucci, Plaintiff's Area Supervisor throughout the majority of her tenure as manager of Store 360, testified that, when he would visit a store, he would do his own tasks, and the store managers would do theirs because he "didn't want to interfere with the operation of their store."  (Dkt. No. 45, at 25.)  Thus, the record evidence establishes that, on a day-to-day basis, Plaintiff generally operated without a

supervisor looking over her shoulder, monitoring her every move.

Moreover, a "local store manager's job is no less managerial for FLSA purposes simply because . . . she has an active district manager." *Thomas*, 506 F.3d at 507 (quoting *Murray*, 939 F.2d at 619). Thus, "various forms of oversight or assistance–weekly visits, frequent calls and emails, or constant availability–[do not necessarily] demonstrate that [a store manager] did not have 'relative freedom from supervision.'" *Id.* (noting that "[a] district manager's periodic visits, as often as a few days each week, do not negate a finding that the store manager operates free from supervision when the district manager is absent[, and] . . . a store manager's frequent, even daily, exchange of email and phone communications with her district manager [also does not] compel a finding that the store manager is subject to 'exacting supervision'").[4]

Furthermore, the level of supervision by Plaintiff's area supervisor differs significantly

---

[4]       *See also Murray*, 939 F.2d at 619 ("The mere fact that a [district] supervisor comes in for a one- or two-day visit does not destroy the [store manager's] sole charge status . . . during the intervals when the superior is absent."); *Moore v. Tractor Supply Co.*, 352 F. Supp 2d 1268, 1277-78 (S.D. Fla. 2004) (finding that a store manager was not "subject to exacting supervision" where his "district managers visited the store approximately once a week for a 'walk thru,'" and where "any other communication [p]laintiff had with his district managers was via telephone or email"); *Perez v. RadioShack Corp.*, 02-CV-7884, 2003 WL 21372467, at *10 (N.D. Ill. June 13, 2003) ("[A]ctive supervision and periodic visits by a higher-level manager do not necessarily eliminate the discretion of the on-site store manager. . . . Recognizing Plaintiffs' contention that they had little real control or authority, the fact remains that they were alone in charge of their stores for many days without the physical presence of any supervisor. This factor weighs in favor of Defendant."); *Haines v. S. Retailers, Inc.*, 939 F. Supp. 441, 450 (E.D. Va. 1996) ("rejecting plaintiff's argument that she did not have freedom from direct supervision because "she could not hire or fire without outside management's approval[,] she performed many of her duties pursuant to the strict guidelines promulgated by senior management[,] she was not permitted to discipline employees without the approval of her supervisor, and she was subject to rigid supervision and regular visits by upper management"); *Meyer v. Worsley*, 881 F. Supp. 1014, 1020-21 (E.D. N.C. 1994) (concluding that executive exemption applies despite the fact that upper management "employed a very direct, hands-on supervisory style," stopping on frequent visits and requiring highly standardized practices, allowing managers "little input" into the nature and quality of the inventory); *Horne v. Crown Cent. Petrol., Inc.*, 775 F. Supp. 189, 191 (D. S.C. 1991) (finding that a store manager "was relatively free from direct supervision" where her "supervisor came by her store only a few times a week").

from that in cases in which courts have found that retail (or convenience) store managers were

not exempt executives under the FLSA.[5]  "Finally, the district manager's availability 'by phone

does not detract in any substantial way' from a finding that the store manager was relatively free

from supervision."  *Thomas*, 506 F.3d at 508 (quoting *Burger King*, 675 F.2d at 522).  "Being

available for advice is in no sense the exercise of supervision."  *Burger King*, 675 F.2d at 522.

> **4.**    **Relationship Between Employee's Salary and Wages Paid to Other**
> **Employees for the kind of Nonexempt Work Performed by the Employee**

Although neither party expressly addresses this factor, both parties have submitted

limited record evidence on the issue, including the following.  Throughout the roughly seven

years that Plaintiff was employed by Defendants, she earned a fixed weekly salary of between

$565.00 and $834.30, regardless of the number of hours she worked.  (Plaintiff was the only

salaried employee at Store 360.)  Plaintiff testified that, "at one time" during her tenure as

---

[5]      *Compare Smith v. Heartland Auto. Servs., Inc.*, 418 F. Supp.2d 1129, 1137 (D.
Minn. 2006) (denying defendant's motion for summary judgment regarding executive exemption
for Jiffy Lube store managers where the company's District Managers "were at the stores almost
every day of the week for hours at a time") *and Cowan v. Treetop Enters., Inc.*, 120 F. Supp.2d
672, 675 (M.D. Tenn. 1999) (granting plaintiffs' motion for summary judgment and finding that
plaintiffs were not exempt executives where Waffle House restaurant unit managers "report[ed]
directly to a district manager who usually has responsibility for three restaurant units in a defined
geographical area") (emphasis added), *with Mims v. Starbucks Corp.*, 05-CV-0791, 2007 U.S.
Dist. LEXIS 9, *26 (S.D. Texas, Jan. 2, 2007) (rejecting plaintiffs' argument that they were not
relatively free from supervision because, even assuming that their district managers, who
supervised at least nine stores, visited their store three to four times per week, staying, on
average, a few hours to all day each visit, plaintiffs, as store managers, were "the single
highest-ranking employee[s] in [their] particular store and w[ere] responsible on site for that
store's day-to-day overall operations")*, Posely v. Eckerd Corp.*, 433 F. Supp.2d 1287, 1304 (S.D.
Fla. 2006) (distinguishing *Cowan* and granting summary judgment to defendant, a retail
pharmacy chain, where its district managers "supervised over 25 stores at any given time"),
*Light v. MAPCO Petrol., Inc.*, 04-CV-0460, 2005 WL 1868766, at *9 (M.D. Tenn. Aug 4, 2005)
(granting summary judgment to defendant where plaintiff managed a gas station and the district
manager "supervised an average of twelve different stores at a time"), *and Meyer*, 881 F. Supp.
at 1020-21 (following *Stuckey* and rejecting plaintiff's argument that the area supervisor "really
was the manager of the Pittsboro Scotchman store because she often made appearances there and
had very much a hands-on managerial style").

manager of Store 360, one of her assistant managers, who earned between ten and twelve dollars per hour, made more money than her after overtime was taken into consideration.  (More specifically, Plaintiff testified that her assistant manager, Michelle Harloff, stated on one occasion that her gross check was more than Plaintiff's.  *See* Dkt. No. 29, Attach. 7, at 41.) However, Plaintiff's testimony regarding her salary and the salary of her subordinates does not take into account the fact that, as the Store Manager, Plaintiff received a higher incentive payment under the quarterly Incentive Program than all other store employees, with the next closest employees receiving forty percent less of the award.

Nonetheless, for the sake of argument, the Court will assume that, during the time period in which Plaintiff earned $834.30 per week, her assistant manager earned $12 per hour.  The Court will further assume, most generously, that the assistant manager worked, on average, five (5) hours of overtime a week during this period.  The Court emphasizes that this assumption is generous because while an assistant manager certainly may have worked overtime in a given week, for which he or she was paid time and a half, Steven Nucci testified that, in accordance with Section 507 of the employee handbook, he would discipline a store manager for scheduling an employee to work overtime.  (Dkt. No. 45, at 7.)  Mr. Nucci further testified that employees were only allowed to work overtime "if the business conditions dictated it."  (*Id*.)  Based on this, as well as the fact that some of the employees that Plaintiff supervised were part-time, (Dkt. No. 29, Attach. 7, at 16), it seems logical from a business perspective that, under ordinary circumstances, Plaintiff would have sought to schedule her part time employees more hours rather than schedule her full time employees overtime.  Therefore, the Court is unwilling to assume that any employees worked, on average, anywhere near the number of overtime hours as Plaintiff.

Therefore, again, assuming most generously that an assistant manager worked an average of forty-five hours a week, the assistant manager would only have earned $570 for the week,[6] which is $264.30 less than Plaintiff earned each week (exclusive of any additional compensation that either party earned through the Incentive Program).[7] This weekly earnings discrepancy is certainly sufficient for the Court to conclude that this factor weighs in favor of a finding that Plaintiff's primary duty was management. *See, e.g., Burger King*, 675 F.2d at 522 ("[T]he evidence in the record is that the employees doing exclusively non-exempt work were paid the minimum wage. Assistant Managers earning $250 or more were paid substantially higher wages even taking their longer hours into account. That fact satisfies [this factor].").[8]

For these reasons, the Court concludes that Defendant has established that each of the four factors supports their position and, in general, have produced abundant evidence indicating that Plaintiff's primary duty as manager of Store 360 was management. The Court would only add that, to the best of its knowledge, of the numerous courts that have addressed the issue of whether a store manager of a gas station, convenience store, corner store and/or mini-mart had management as her primary duty, all have held that the plaintiff's primary duty consisted of

---

[6]        12 times 40, or 480, plus 18 times 5, or 90, equals 570.

[7]        Although there is no record evidence establishing how often the employees at Store 360 were paid under the Incentive Program, or how much the employees at Store 360 were paid under the Incentive Program, based on the fact that it is undisputed that Plaintiff would have received 40% more compensation than her assistant manager, the Court finds that it is safe to conclude that the average weekly earning discrepancy was even greater than $264.30.

[8]        *See also Langley v. Gymboree Ops., Inc.*, 530 F. Supp.2d 1297, 1302-03 (S.D. Fla. 2008) (concluding that  fourth factor weighed in favor of finding plaintiff's primary duty was management where "[p]laintiff was always paid in excess of $455 each week and always received her full salary regardless of the number of hours worked[,] . . . was the only person classified as a salaried, overtime exempt employee in the store[,] . . . was paid an annual salary ranging from $40,000 in May 2005 to $45,100 when her employment terminated[,] . . . was eligible for a larger bonus for store performance than any of the other employees[, and] . . . [t]he highest paid, full-time assistant manager at the Gardens store made $15 an hour").

management.[9]  As a result, Plaintiff's claim under the FLSA is dismissed.

### B.      Plaintiff's Claims Under New York State Law

As stated above in Part I.C. of this Decision and Order, Defendants seek the dismissal of

Plaintiff's claims under New York State Labor Law because (1) Plaintiff satisfied the executive

exemption, (2) Plaintiff was paid far more than the minimum wage rate, and (3) Plaintiff's

cannot assert a private right of action based on her meal period.

Because the Court has already denied Plaintiff's FLSA claim, the Court declines to

extend pendent jurisdiction over these claims.  *See Hurley v. County of Yates*, 04-CV-6561, 2005

WL 2133603, at *3 (W.D.N.Y. Aug.31, 2005) ("Where a district court has dismissed all claims

over which it has original jurisdiction, the court may decline to exercise jurisdiction over state

law claims.") (citing 28 U.S.C. § 1367[c][3]), *accord Middleton v. Falk*, 06-CV-1461, 2009 WL

666397, at *9 (N.D.N.Y. Mar.10, 2009) (Suddaby, J. adopting Homer, M.J.); *see also United*

*Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966)

(citations omitted) ("[P]endent jurisdiction is a doctrine of discretion, not of plaintiff's right. Its

justification lies in considerations of judicial economy, convenience and fairness to litigants; if . .

. not present a federal court should hesitate to exercise jurisdiction over state claims.").  As a

---

[9]       *See Va. Oil Co.*, 69 F. App'x. at 638; *Murray*, 939 F.2d at 617-20 (holding that
the store manager of "an isolated gasoline station, convenience store[,] and restaurant[ ] had
management as his or her primary duty"); *Taylor v. True N. Mgmt.*, 08-CV-0190, 2009 U.S. Dis.
LEXIS 63635, at *29 (S.D. Ohio July 24, 2009) (concluding that filling station convenience
store manager had management as his primary duty because, despite the fact that his "duties took
up no more than 25% of [his] actual working time[,] . . . [m]anaging the store was [p]laintiff's
most important responsibility, and clearly his primary duty"); *MAPCO Petrol., Inc.*, 2005 WL
1868766, at *9; *Haines*, 939 F. Supp. at 451 (finding that manager of convenience store had
management as his primary duty); *Meyer*, 881 F. Supp. at 1019 (finding that a convenient store
manager had management as his primary duty); *Sturm v. TOC Retail, Inc.*, 864 F. Supp. 1346,
1352-53 (M.D. Ga. 1994) (finding that the managers of a convenience store had management as
their primary duty); *Horne*, 775 F. Supp. at 190-91 (finding that a manager of a convenience
store had "management of her store" as her "primary duty").

result, Plaintiff's state law claims are dismissed without prejudice.

**ACCORDINGLY,** it is

**ORDERED** that Defendants' motion for summary judgment (Dkt. No. 27) is

**GRANTED**; and it is further

**ORDERED** that Plaintiff's claims under New York State Labor Law are **DISMISSED**

without prejudice to refiling in New York State Court within **THIRTY (30) DAYS** of this

Order, pursuant to 28 U.S.C. § 1367(d); and it is further

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is **DISMISSED**.

Dated: August 23, 2010
        Syracuse, New York

Hon. Glenn T. Suddaby
U.S. District Judge